**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO**

**Civil Action No.**

**WILBUR MURRAY**

       **Plaintiff,**

**v.**

**CITY AND COUNTY OF DENVER, a municipality**

       **Defendant.**

_____

**COMPLAINT**

_____

## I.     PRELIMINARY STATEMENT AND NATURE OF THE ACTION

1.    Plaintiff Wilbur Murray ("Officer Murray"), a decorated military veteran and long-serving Black police officer, by and through his undersigned counsel, brings this action against Defendant City and County of Denver pursuant to 42 U.S.C. § 1981, to remedy a continuous, pervasive, and ongoing pattern of racial discrimination, harassment, and retaliation by the Denver Police Department ("DPD").

2.    Officer Murray has dedicated his life to public service, first for twenty years in the United States Army, from which he was honorably discharged, and then for nearly two decades as a police officer with the DPD, beginning on September 25, 2006. Throughout his tenure, he has consistently

1

performed his duties with professionalism and integrity, receiving performance reviews of "Met Expectations" and numerous commendations for his service.

3.    Despite his exemplary record, Officer Murray has been subjected to a relentless campaign of racial discrimination and retaliation that constitutes a continuing violation of his civil rights. This is not a case of isolated incidents, but rather a manifestation of the DPD's deeply ingrained culture of racial animus, where Black officers are held to a different standard, subjected to disparate treatment, and punished for upholding the very principles of justice they are sworn to enforce.

4.    The pattern of discrimination against Officer Murray is long and well-documented. He has been unfairly disciplined in situations where white colleagues were not; he was denied leave for family emergencies, such as visiting his daughter in the ICU, while white officers were granted time off for similar or less critical reasons; he was subjected to harassment and effectively demoted to "recruit status" following a pretextual disciplinary action; and he even had a service award withheld by a supervisor for seven months.

5.    This hostile environment intensified whenever Officer Murray dared to challenge the DPD's culture of misconduct. After reporting a white officer for choking a mentally ill juvenile, Officer Murray was met with retaliation from his colleagues and supervisors, who created an unsafe work environment where no one would provide him with backup.

6.    The retaliation culminated in a supervisor openly stating, "I want to fire him, but he keeps doing his job," and Officer Murray's punitive transfer from a specialized unit in October 2022. The discriminatory conduct has continued into 2023, with Officer Murray facing new complaints and the threat of a lengthy suspension under a new supervisor.

7.    After nearly two decades of enduring a workplace poisoned by racial discrimination, Officer Murray files this action to vindicate his rights and hold the Defendant accountable. He seeks not only

to remedy the harm done to his own career but to challenge the systemic racism within the DPD and ensure that no other officer has to suffer the same indignities simply because of the color of their skin.

## JURISDICTION AND VENUE

8.      This Court holds jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) because this is a civil action arising under the federal statutory provisions of 42 U.S.C. § 1981.

9.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THRESHOLD MATTERS: CONDITIONS PRECEDENT

10.      Exhaustion is not a prerequisite for filing the claims brought herein under 42 U.S.C. § 1981.

## PARTIES

11.      At all times relevant to this Complaint, Plaintiff Wilbur Murray has served in the Denver Police Department for over nineteen years, holding the rank of Police Officer 1st Grade, is an individual, and a resident of Colorado.

12.      Defendant City and County of Denver ("City") is a municipality/county duly constituted under the laws of Colorado, with its principal offices located at the City and County Building, 1437 Bannock St., Denver, CO 80202.  The Denver Police Department ("DPD") operates as a department of the City.

## V. FACTUAL ALLEGATIONS

### A.  Background on the Pattern of Racial Discrimination at the DPD

13.      Defendant Denver Police Department, established in 1859, is the full-service police department for the City and County of Denver, Colorado, which provides police services to the entire county, including Denver International Airport.

14.     Plaintiff, Police Officer 1st Grade Wilbur Murray, is a Black male who joined the DPD on September 25, 2006, after serving twenty years in the U.S. Army and receiving an Honorable discharge.

15.     Upon information and belief, Black officers are significantly underrepresented within the DPD's ranks compared to the racial demographics of the community they serve. While Black residents comprise approximately 9.9% of Denver's population, the percentage of Black officers in the DPD is believed to be substantially lower, reflecting a systemic issue in recruitment, hiring, and retention of Black officers.

16.     Furthermore, upon information and belief, Black officers who are employed by the DPD are subjected to disproportionately harsh discipline compared to their white counterparts. This pattern is so pronounced that it has been noted by organizations such as the Black Police Officers Association (BPA), which observed in one instance that Officer Murray, the only Black person on his team, was the one singled out for discipline regarding an alleged failure to take a report at a domestic violence incident.

17.     This disparate treatment is not comprised of isolated incidents but is indicative of a deep-seated, department-wide culture of racial bias within the DPD. This culture manifests in a two-tiered system of justice, where white officers are frequently shielded from accountability and even rewarded with promotions after engaging in misconduct, while Black officers like Officer Murray are subjected to heightened scrutiny, pretextual investigations, harsher discipline, and retaliation for reporting that same misconduct.

18.     The DPD's culture of racial animus and impunity for white officers is exemplified by an incident that occurred approximately three to four years prior to October 2022. During a call involving a mentally ill juvenile Black male, a white DPD officer dragged the juvenile out of his home and choked him. Despite this egregious and unconstitutional use of force, the white officer was not meaningfully disciplined and was subsequently promoted to the rank of Sergeant. In stark contrast,

Officer Murray and other Black officers who reported the misconduct were ostracized and faced retaliation.

19.    The discriminatory culture also permeates administrative and personnel decisions, creating a hostile environment. Officer Murray's supervisor denied his request for time off to visit his daughter while she was in the ICU. Yet, the same supervisor and others within the DPD granted leave to a white male officer to handle personal infertility issues and to another officer whose daughter was also in the ICU, demonstrating a clear and racially motivated double standard in the handling of employee family emergencies.

20.    This pervasive pattern and practice of racial discrimination, disparate treatment, and retaliation, fostered and tolerated by the DPD, has created a hostile, stressful, and unsafe work environment for Officer Murray and other Black officers, serving as a continuous violation of their civil rights and derailing their careers.

B. **The Continuing Violation: A Chronology of Discrimination and Harassment Against Officer Murray**

21.    Officer Murray's nearly two-decade career with the DPD has been characterized by consistent high performance, as evidenced by his performance reviews and numerous commendations, including a STAR award and a Life Saving Award. However, this record of exemplary service has been continuously undermined by a persistent and severe pattern of racially motivated discrimination, disparate treatment, and retaliation from his supervisors and the DPD command structure.

22.    The pattern of discrimination began early in his career. In or around March 2009, while assigned to the Denver International Airport (DIA), Officer Murray was unjustly suspended for three days (recorded as 24 hours of fined time) for allegedly leaving a shift early (IA P2009-04027). This discipline was pretextual, as Officer Murray's early departure had been expressly approved by his supervisor at the time.

5

23.    Following this incident, Officer Murray was transferred to District 2 in April 2009. The discriminatory treatment continued and escalated. In or around September 2009, Officer Murray was disciplined for an alleged failure to file a report regarding a domestic violence incident (IA P2009-10078). Notably, the Black Police Officers Association (BPA) observed that Officer Murray was the only Black officer on his team and the only officer disciplined in connection with the incident, highlighting the disparate standard to which he was held.

24.    As a result of this discriminatory discipline, Officer Murray was subjected to a campaign of harassment and humiliation. He received a formal Written Reprimand and was effectively demoted to **"recruit status."** This included being forced to ride with a training officer and being required to take and pass two recruit-level tests per day, actions designed to undermine his authority and derail his career.

25.    The animus from his supervisors manifested in other ways. An award that Officer Murray earned for his service sat on his supervisor's desk for approximately seven months before it was given to him, a petty and demeaning act of disrespect.

26.    The disparate treatment extended to requests for personal leave. On one occasion, Officer Murray's supervisor canceled his approved days off, which he had planned to use to take his daughter to Spelman College. In a more egregious instance, the same supervisor in District 2 denied Officer Murray's request for time off to visit his daughter while she was in the Intensive Care Unit (ICU). This denial was in stark contrast to the treatment of white officers; the same supervisor granted leave to a white male officer to handle personal infertility issues, and another white officer was permitted time off when his daughter was in the ICU at Denver Health.

27.    The discrimination against Officer Murray invariably escalated into retaliation whenever he reported misconduct by white officers. Approximately three to four years prior to October 2022, Officer Murray was on a call where a white officer dragged a mentally ill juvenile Black male out of

his home and choked him without probable cause. Officer Murray reported this unconstitutional use of force to Internal Affairs.

28. In retaliation for his report, Officer Murray was ostracized by his colleagues and supervisors. In a profession where officers depend on each other for their safety, Officer Murray was put in a life-threatening position where fellow officers would not provide him with backup on calls. Meanwhile, upon information and belief, the white officer who choked the juvenile was never meaningfully disciplined and was later promoted to Sergeant.

29. The retaliatory and discriminatory environment intensified throughout 2022. A supervisor in the homeless outreach unit, where Officer Murray was assigned, was heard stating, **"I want to fire him, but he keeps doing his job,"** demonstrating clear retaliatory animus.

30. In or around April 2022, this same supervisor filed an Internal Affairs complaint against Officer Murray regarding a comment he allegedly made (IA IC2022-0021). The supervisor who filed the complaint had previously directed profane language at Officer Murray, stating **"fuck you,"** with no apparent repercussions. The complaint against Officer Murray, however, was swiftly adjudicated and resulted in a disciplinary "Journal Entry." This incident is another example of the DPD's two-tiered and racially biased disciplinary system.

31. The retaliation culminated in October 2022 when Lieutenant Aaron Sanchez punitively transferred Officer Murray. Despite Officer Murray's long and successful assignment as a Community Resource Officer (CRO) in a specialized division in District 2, Lt. Sanchez transferred him to a patrol detail in District 5, falsely claiming the move was not punitive.

32. The continuous violation of Officer Murray's rights has persisted into 2023. After the departure of Sergeant Howard, Lieutenant Aaron Sanchez began requiring Officer Murray and one other officer to submit daily reports, a form of heightened scrutiny and harassment not required of other officers. Furthermore, as of June 2023, Officer Murray was facing two new complaints and the

threat of a 10- to 15-day suspension, demonstrating that the pattern of discrimination and retaliation remains unabated.

### C. A Career Derailed by Discrimination

33.     The cumulative effect of the Defendant's continuous pattern of racial discrimination and retaliation has been the systematic derailment of Officer Murray's distinguished career. Despite his consistently positive performance reviews, where supervisors lauded him as a **"constant professional,"** a **"model of the type of officer that is needed in his particular position,"** and **"one of the Officers I can give an assignment and I know that it will get done,"** the DPD's actions have actively stalled his professional growth and crushed his ambition.

34.     Officer Murray consistently sought to advance his career and contribute to the DPD in greater capacities. In his 2020 performance review, he explicitly stated his career goal was to **"seek an assignment at the Police Academy,"** an ambition reflecting his commitment to training and improving the department.

35.     However, the unrelenting hostility and discrimination took a heavy toll. By his 2021 review, there is a notable shift in outlook. A supervisor commented, **"Officer Murray has advised that he is in the tail end of his career and he wants to assist this unit in any aspect he can."** This change from aspiring to an academy role to resigning himself to the **"tail end of his career"** was not a natural progression but a direct consequence of the Defendant's discriminatory environment, which made it clear that opportunities for advancement were closed to him as a Black officer who refused to tolerate misconduct.

### 1.     Punitive Transfer from a Specialized Assignment

36.     From October 2019 to October 2022, Officer Murray served as a Community Resource Officer **("CRO")** in District 2. This was a specialized assignment that required a high degree of professionalism, community engagement, and problem-solving skills—all qualities his supervisors

repeatedly recognized in his performance reviews.

37.     In retaliation for Officer Murray's protected activities and as a continuation of the pattern of discrimination, Lieutenant Aaron Sanchez punitively removed Officer Murray from his specialized CRO role in October 2022. He was involuntarily transferred to a standard patrol assignment in District 5, stripping him of the specialized duties he had performed with excellence for three years.

38.     Upon information and belief, Lt. Sanchez's assertion that the move was **"not punitive"** was pretextual. The transfer was an adverse employment action designed to further isolate and punish Officer Murray, removing him from a coveted assignment and placing him back into a general patrol role, thereby stalling his career progression and denying him the ability to utilize his specialized skills.

**2.     Continued Harassment and Heightened Scrutiny**

39.     The retaliation and harassment did not cease after the punitive transfer. In his new assignment in District 5, Officer Murray continued to be subjected to disparate treatment and heightened scrutiny. In or around July 2023, following a change in supervision, Lt. Aaron Sanchez began requiring Officer Murray and one other officer to submit daily activity reports. Upon information and belief, this burdensome requirement was not imposed upon the rest of the team, serving as another tool of targeted harassment.

40.     These actions—the early, humiliating demotion to "recruit status," having his service award deliberately withheld for months, the denial of his ambition to join the Police Academy, the punitive transfer from his specialized CRO role, and the ongoing, targeted scrutiny through daily reports—are not isolated incidents. They represent a coordinated and continuous campaign to undermine, marginalize, and derail the career of a highly competent and decorated Black officer.

41.     As a direct and proximate result of the Defendant's discriminatory and retaliatory actions, Officer Murray has suffered and continues to suffer significant professional and economic harm, as well as severe emotional distress. A career that should have been marked by continued advancement

and recognition has instead been derailed by systemic racial animus.

## CAUSES OF ACTION

### COUNT ONE

**Racial Discrimination, Disparate Treatment, and Hostile Work Environment in Violation of 42 U.S.C. § 1981**

42.     Plaintiff Wilbur Murray restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

43.     As a Black man, Officer Murray is a member of a protected class under 42 U.S.C. § 1981. At all relevant times, he was qualified for his position as a Police Officer 1st Grade, consistently meeting or exceeding performance expectations.

44.     Defendant, acting under color of state law through its agents, supervisors, and employees at the DPD, intentionally discriminated against Officer Murray by denying him the same rights to make and enforce contracts as are enjoyed by white citizens, specifically concerning the terms, conditions, and privileges of his employment.

45.     Defendant's discrimination against Officer Murray constitutes a continuing violation of his rights. This was not a series of discrete acts but an ongoing, unlawful employment practice manifesting as both disparate treatment and a racially hostile work environment.

46.     Defendant subjected Officer Murray to disparate treatment by disciplining him more harshly than similarly situated white officers. This includes, but is not limited to, the pretextual three-day suspension at DIA, the written reprimand and demotion to "recruit status" for a reporting failure for which he was singled out, and the retaliatory IA complaint filed against him by a supervisor who faced no repercussions for using profane language toward Officer Murray.

47.    Furthermore, Defendant disparately denied Officer Murray leave for family emergencies, such as visiting his daughter in the ICU, while granting leave to white officers for similar or less critical personal matters, further demonstrating that his employment was governed by a different and discriminatory set of rules.

48.    Defendant's actions and inactions created a racially hostile work environment that was severe and pervasive enough to alter the conditions of Officer Murray's employment. This includes the pattern of unfair discipline, the denial of leave, the deliberate withholding of a service award, the constant threat of termination, and the cumulative effect of being treated as an inferior employee due to his race.

49.    As a direct and proximate result of Defendant's unlawful discriminatory actions, Officer Murray has suffered and continues to suffer damages, including but not limited to past and future lost wages and benefits, reputational harm, career derailment, and severe emotional distress.

50.    Defendant's actions were undertaken with malice or with reckless indifference to Officer Murray's federally protected rights, entitling him to punitive damages.

**COUNT TWO**

**Retaliation in Violation of 42 U.S.C. § 1981**

51.    Plaintiff Wilbur Murray restates and realleges each and every paragraph of this Complaint as if fully set forth herein.

52.    Officer Murray engaged in legally protected activities by opposing and complaining about conduct he reasonably believed to be unlawful racial discrimination and misconduct. These activities include, but are not limited to, reporting a white officer to Internal Affairs for choking a juvenile and complaining about racially disparate treatment in discipline and leave denials.

53.     Defendant, through its agents and supervisors, was aware of Officer Murray's protected activities.

54.     After and because of Officer Murray's protected activities, Defendant subjected him to a series of adverse employment actions. These retaliatory actions include, but are not limited to: being ostracized and denied backup by fellow officers, creating a dangerous work environment; a supervisor openly stating, "I want to fire him, but he keeps doing his job"; being subjected to pretextual and retaliatory Internal Affairs complaints; the punitive removal from his specialized CRO assignment and transfer to patrol in October 2022; and being subjected to heightened scrutiny and harassment through mandatory daily reporting not required of others.

55.     The adverse employment actions were causally connected to Officer Murray's protected activities. The timing of the actions, coupled with the clear animus expressed by his supervisors, demonstrates that Defendant took these actions to punish Officer Murray for speaking out against racial discrimination and misconduct.

56.     As a direct and proximate result of Defendant's unlawful retaliatory actions, Officer Murray has suffered damages, including but not limited to past and future lost wages and benefits, reputational harm, career derailment, and severe emotional distress.

57.     Defendant's retaliatory actions were undertaken with malice or with reckless indifference to Officer Murray's federally protected rights, entitling him to punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Wilbur Murray respectfully requests that this Court enter a judgment in his favor and against Defendant City and County of Denver, granting the following relief:

A.      An award of compensatory damages to compensate Officer Murray for past and future economic losses, including but not limited to back pay, front pay, lost wages, and lost benefits, plus pre- and post-judgment interest;

B.      An award of compensatory damages for non-economic losses, including emotional distress, humiliation, pain and suffering, and damage to his professional reputation, in an amount to be determined at trial;

C.      An award of punitive damages against Defendant for its malicious and/or recklessly indifferent violation of Officer Murray's federally protected rights, in an amount sufficient to punish Defendant and deter future similar conduct;

D.      A declaration that the acts and practices of Defendant complained of herein violated Officer Murray's rights as secured by 42 U.S.C. § 1981;

E.      Permanent injunctive relief, ordering Defendant, its officers, agents, and employees to: (1) cease and desist from all discriminatory and retaliatory practices against Officer Murray; (2) expunge from Officer Murray's personnel file all unfair, discriminatory, and retaliatory disciplinary actions and complaints; and (3) implement effective policies, procedures, and training to prevent future racial discrimination and retaliation within the DPD;

F.      An award of reasonable attorneys' fees and litigation costs, including expert witness fees, pursuant to 42 U.S.C. § 1988; and

G.      Such other and further legal and equitable relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff Wilbur Murray demands a trial by jury on all claims properly triable by a jury.

Dated: October 23, 2025
Denver, Colorado

13

Respectfully submitted,
FOR THE PEOPLE, LLC | A
PEOPLE'S LEGAL OFFICE
*/s/ Jenipher R. Jones, Esq.*

Jenipher R. Jones, Esq.
110 16th Street
Suite 1400
# 1001
Denver, CO 80202
Fax: 720.796.9408
Tel. 720.459.9333 or 720.380.4408
(Direct)

**Counsel for Plaintiff Wilbur
Murray**